*1254 OPINION
By the Court,
Young, J.:

FACTS

On August 21, 1993, Nevada Highway Patrol troopers were patrolling U.S. Highway 6 in White Pine County. The troopers followed the vehicle of appellant Ted Louis Taylor (“Taylor”) for about three miles, noticing that Taylor appeared to be nervous. The troopers could have passed Taylor’s vehicle, but the 45 miles per hour speed of Taylor’s vehicle triggered their suspicion that Taylor might be intoxicated.[1]
The troopers then noticed that the left brake light on Taylor’s vehicle was not functioning. The troopers then decided to pull over Taylor’s vehicle, initially intending to issue Taylor a repair order for the inoperative brake light.
Taylor volunteered that his California driver’s license had expired. The troopers, however, discovered that Taylor’s license had been suspended. Taylor was then arrested for driving without a valid license. Taylor was handcuffed and placed in the back seat of the patrol car.
*1255 The troopers then proceeded to inventory items in Taylor’s vehicle in preparation for towing. One trooper opened a small pouch that was inside a briefcase on the back passenger seat and discovered a brown vial with some white powdery residue inside and some Zig Zag rolling papers. The troopers then returned to the patrol car and read Taylor his Miranda rights. Taylor told the troopers he was willing to talk without his attorney and that he knew the troopers had found his crank and marijuana pipe. He then informed them that there was some marijuana located behind the back seat of the car.
Taylor later pleaded guilty to possession of marijuana under a plea agreement preserving his right to appeal the district court’s denial of the suppression motion. The district court sentenced Taylor to two years in the Nevada State Prison, suspended the sentence, and placed Taylor on probation for four years. In addition to the usual conditions of probation, Taylor was ordered to reimburse White Pine County for his defense costs.
The presentence report informed the district court of Taylor’s age, level of education, employment and earnings for 1993. Taylor had worked as a house painter for approximately seven years and had earned approximately $8,000.00 in 1993. Taking into consideration Taylor’s financial circumstances, the district court reduced his fine from $2,000.00 to $500.00 and gave him the entire four-year probationary period to pay it. In addition, Taylor was given the entire probationary period to repay attorney’s fees incurred in his representation. After the district court was advised that the fees could be substantial (later determined to be $3,600.00), the district court informed Taylor that probation terms are modifiable; and that if the fees proved excessive, the district court would reduce them to a reasonable amount.
Taylor challenges on appeal the legality of the arresting troopers’ actions leading up to the seizure of evidence and his inculpa-tory admissions. Taylor contends that the initial stop, the request to see Taylor’s driver’s license, the computer check on the license, and the eventual charge of driving without a valid license and his concomitant arrest were all performed as a pretext for the purpose of ultimately searching Taylor’s vehicle for incriminating evidence. Additionally, Taylor contends that it was error to include a requirement that he reimburse White Pine County for his defense costs as a condition of probation.

DISCUSSION

Pretext

This court addressed the issue of pretextual stops in Alejandre v. State, 111 Nev. 1235, 903 P.2d 794 (1995). In sum, although *1256 the United States Supreme Court has never directly addressed the issue of pretextual stops,[2] the Court has held that an objective assessment of the actions of law enforcement officers should be taken when determining if there has been a violation of the Fourth Amendment. Scott v. United States, 436 U.S. 128, 137-38 (1978); see also United States v. Robinson, 414 U.S. 218, 236 (1973) (legal justification for search incident to arrest must be evaluated objectively without regard to arresting officer’s subjective fears); Terry v. Ohio, 392 U.S. 1, 21-22 (1968) (in making assessment of the reasonableness of a search, it is imperative that the facts be judged against an objective test). In deferring to the Supreme Court’s direction, courts have developed two distinct objective tests with potentially differing consequences.
The first test, labeled the “would” test, asks whether a reasonable officer would have acted similarly under the circumstances. See, e.g., United States v. Guzman, 864 F.2d 1512 (10th Cir. 1988). In Guzman, police officers in New Mexico stopped defendant Guzman for failing to wear a seat belt. Subsequently, events transpired that led to the seizure of incriminating evidence in Guzman’s vehicle. On the issue of pretext, the United States Court of Appeals for the Tenth Circuit Court stated:
If police officers in New Mexico are required to and/or do routinely stop most cars they see in which the driver is not wearing his seat belt, then this stop was not unconstitutionally pretextual at its inception, even if [the officer] subjectively hoped to discover contraband during the stop. Conversely, if officers rarely stop seat belt law violators absent some other reason to stop the car, the objective facts involved in this stop suggest that the stop would not have been made but for a suspicion that could not constitutionally justify the stop.
Guzman, 864 F.2d at 1518 (citations omitted).
In contrast, the second test, labeled the “could” test, asks whether the stopping or arresting officer’s actions were legally authorized. See, e.g., United States v. Cummins, 920 F.2d 498 (8th Cir. 1990), cert. denied, 502 U.S. 962 (1991). Under the “could” test, “the stop ‘remains valid even if the officer would have ignored the traffic violation but for his other suspicions.’” United States v. Meyers, 990 F.2d 1083, 1085 (8th Cir. 1993) (quoting United States v. Cummins, 920 F.2d 498, 500-01 (8th Cir. 1990), cert. denied, 502 U.S. 962, (1991)).
*1257 Although the stop of Taylor’s vehicle would have been valid under either test, as stated in Alejandre, we follow the United States Court of Appeals for the Ninth Circuit in adopting the “would” test. See United States v. Cannon, 29 F.3d 472, 476 (9th Cir. 1994) (“[W]e treat our previous cases as consistent with the Tenth and Eleventh Circuits’ objective ‘would have’ standard.”).
Therefore, the appropriate inquiry is whether a reasonable officer would have acted similarly under the circumstances. Taylor was driving on a highway at only 45 miles per hour. The slow speed of Taylor’s vehicle did not compel the officers to pull, over Taylor’s vehicle; it did, however, trigger suspicion that Taylor might be intoxicated. The officers did not pull over Taylor’s vehicle until they witnessed that the left brake light was not functioning.[3] We conclude that any reasonable officer, absent suspicion of an unrelated serious crime, would have pulled over Taylor’s vehicle. See Cannon, 29 F.3d at 474. In addition, we conclude that the actions of the officers after stopping Taylor’s vehicle were routine.

Reimbursement of Attorney’s Fees

Taylor argues he should not have been required to reimburse White Pine County for the cost of his defense because (1) the legislature did not intend that the granting of probation could be contingent upon the reimbursement of attorney’s fees incurred by the State in defending Taylor; and (2) contrary to the holding in Fuller v. Oregon, 417 U.S. 40 (1974), strongly suggesting that a statute requiring reimbursement is valid only if reimbursement is made contingent on ability to pay, the district court failed to determine Taylor’s ability to pay. Taylor notes that the district court was aware that he was unemployed, had made less than $8,000.00 in 1993, and would have significant attorney’s fees because of the suppression motion.
The State, in turn, directs this court’s attention to NRS 176.1853 as authority for conditioning probation on reimbursement of attorney’s fees. NRS 176.1853 provides, in relevant part:
1. In issuing an order granting probation, the court may fix the terms and conditions thereof, including a requirement for restitution ....
*1258 The State also emphasizes that the same safeguards applicable to the Oregon recoupment statute, that was upheld by the Supreme Court in Fuller, are applicable in Nevada. Specifically, NRS 178.3975 provides that
2. The court shall not order a defendant to make [a reimbursement of attorney fees] unless the defendant is or will be able to do so. In determining the amount and method of payment, the court shall take account of the financial resources of the defendant and the nature of the burden that payment will impose.
3. A defendant who has been ordered to pay expenses of his defense and who is not willfully or without good cause in default in the payment thereof may at any time petition the court which ordered the payment for remission of the payment or of any unpaid portion thereof. If it appears to the satisfaction of the court that payment of the amount due will impose manifest hardship on the defendant or his immediate family, the court may remit all or part of the amount due or modify the method of payment.
Finally, the State notes that the district court was aware of Taylor’s age, level of education, earnings for 1993, and vocation. Taylor had been employed as a house painter for approximately seven years and had made approximately $8,000.00 in 1993, despite the fact that he was incarcerated for four and one-half months of that year.[4] Taking into consideration Taylor’s financial circumstances, the district court reduced the fine imposed from $2,000.00 to $500.00 and gave Taylor the entire four-year probationary period to pay. Likewise, Taylor was given the entire four years to repay attorney’s fees. After the district court was informed that the fees could be relatively significant (later determined to be $3,600.00), the district court informed Taylor that probation terms are modifiable; and if the submitted fees were excessive, the district court would reduce them to a reasonable amount.
We conclude that NRS 176.1853 and NRS 178.3975 grant district courts discretion to condition probation on the repayment of attorney’s fees. NRS 176.1853 contains a general bestowal of discretion to “fix the terms and conditions [of probation.]” Furthermore, NRS 178.3975 provides that a “court may order a *1259 defendant to pay all or any part of the expenses incurred by the county, city or state in providing the defendant with an attorney
In addition, we conclude that the spirit of Fuller has been satisfied in the present case. The Fuller court was confronted with an Oregon statute authorizing recoupment of attorney’s fees paid by the State. On the issue of whether the Oregon statute denied indigent defendants their constitutional right to counsel, the Court commented:
Oregon’s system for providing counsel quite clearly does not deprive any defendant of the legal assistance necessary to [be heard by counsel]. As the State Court of Appeals observed in this case, an indigent is entitled to free counsel “when he needs it” — that is, during every stage of the criminal proceedings against him. The fact that an indigent who accepts state-appointed legal representation knows that he might someday be required to repay the costs of these services in no way affects his eligibility to obtain counsel. The Oregon statute is carefully designed to insure that only those who actually become capable of repaying the State will ever be obliged to do so. Those who remain indigent or for whom repayment would work “manifest hardship” are forever exempt from any obligation to pay.
Fuller, 417 U.S. at 52-53 (emphasis added). Taylor’s contention that recoupment must be conditioned on ability to pay is therefore correct, but the statutory safeguards written into Oregon’s recoupment statute are likewise present in NRS 178.3975. Moreover, the facts available to the district court support the district court’s finding that Taylor would be able to reimburse White Pine County for the cost of his defense. In addition, Taylor may at any time petition the district court for relief from his reimbursement obligation.

CONCLUSION

For the foregoing reasons, we affirm the district court’s order denying the motion to suppress and the judgment of conviction with a condition of probation requiring Taylor to reimburse White Pine County for the cost of his defense.
Springer, Shearing and Rose, JJ., concur.

 One trooper testified that he did not suspect that Taylor was intoxicated, but followed him to pull him over and recommend that he either speed up or move off the road as traffic was backing up behind him.

 The Court has declared that “[a]n arrest may not be used as a pretext to search for evidence.” See United States v. Lefkowitz, 285 U.S. 452, 467 (1932).

 Officers may make stops if they observe a safety hazard. Delaware v. Prouse, 440 U.S. 648, 660 (1979).

In addition, counsel for Taylor stated at sentencing:
When the time behind bars is done, he has basically, family [sic]. He has a support group lined up. He is a person who has been a productive member of society, and we believe he’ll be able to work again down there in Louisiana.